IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GRAMERCY GROUP, INC., | ) | CIVIL NO. 16-00114-JMS-KSC |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN SUPPPORT OF |
| | ) | MOTION |
| vs. | ) | |
| | ) | |
| D.A. BUILDERS, LLC a/k/a D.A. | ) | |
| BUILDERS; DAVID A. ALCOS III; | ) | |
| JOHN DOES 1-20, JANE DOES 1-10; | ) | |
| DOE CORPORATIONS 1-10, DOE | ) | |
| PARTNERSHIPS 1-10, and OTHER | ) | |
| ENTITIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM IN SUPPORT OF MOTION

I.    INTRODUCTION

       Plaintiff Gramercy Group, Inc.'s ("Gramercy") requests this Court

preclude Defendants D.A. Builders, LLC and David A. Alcos III (collectively,

"DAB") from introducing evidence, testimony, or arguments regarding ethnicity,

organized crime, or the potential financial consequences of certain verdicts, which

have no relevance in this matter, but will be introduced solely to arouse an

emotional reaction from the jury or to prejudice Gramercy or its witnesses and

employees.  This matter does not involve any claims of racial discrimination or

criminal misconduct by Gramercy.  Despite the absence of such claims, DAB has

535967-3

raised the issue of Gramercy employees' Italian heritage several times in deposition testimony.  The testimony on Italian heritage is often tied to an insinuation that Gramercy's employees are affiliated with or part of the "Mafia" or organized crime.  Because there are no race-based or Mafia-related claims at issue, the Italian heritage of Gramercy's employees and any associated stereotypes are irrelevant and must be excluded.

Furthermore, statements regarding the ethnicity of Gramercy's employees or insinuations of Gramercy's connection to the Mafia, when used in conjunction with testimony or arguments regarding speculative financial impacts an adverse verdict could have on DAB, can only serve to prejudice the jury against Gramercy.  Such arguments or testimony has no probative value to the merits of the claims and defenses in this case and would only be prejudicial to Gramercy. Because the evidence's potential for extreme prejudicial effect substantially outweighs its probative value, Gramercy seeks an order excluding all evidence, testimony, or argument regarding or referencing any of the following:

- the Italian heritage of any current or former employees of either Gramercy or DCK;

- that Gramercy has connections to the "Mafia", "Mob", or other crime organizations;

- that Gramercy and DCK conspired against DAB due to their employees' similar racial heritage or alleged Mafia connections;

535967-3

- that DAB or its employees allegedly feared for their lives, their livelihoods, and the lives of their families because of Gramercy's alleged Mafia connections and/or racial heritage of its employees;

- the Complaint made by DAB against Gramercy to the State of Hawaii Regulated Industries' Complaint Office ("RICO") and the ensuing investigation, which DAB personnel testified was commenced for the sole reason that Gramercy or its employees may be connected to the Mafia because they are Italian, from New York, and work in demolition, and DAB employees therefore feared for their safety; and/or

- the alleged financial consequences of a verdict against DAB, especially any testimony relating to the potential corporate or individual bankruptcy of DAB or Mr. David Alcos or a potential foreclosure on Mr. Alcos' house or other property.

II.   <u>BACKGROUND</u>

This dispute arises from the construction and renovation of the International Market Place ("IMP" or "Project"). Dkt. 15 at ¶ 7. Dck/FWF, Inc. ("DCK") was the project's construction manager and executed a subcontract with Gramercy. Gramercy, in turn, executed a subcontract dated February 13, 2015 ("Subcontract") with DAB for certain scopes of work relating to framing and drywall at the Project. Dkt. 15 at ¶ 14-15. After issues with DAB's timeliness and finances interfered with the progress of the Project, DAB abandoned the Project. <u>See</u> generally Dkt. 15.

Thereafter, Gramercy filed a First Amended Complaint against DAB ("Complaint") alleging breach of contract, breach of good faith and fair dealing, promissory estoppel, unjust enrichment, misrepresentation, interference, and

535967-3

conversion.  <u>See</u> <u>generally</u> Dkt. 15.  DAB filed a counterclaim asserting claims for breach of contract, misrepresentation, fraudulent inducement, and unfair trade practices.  <u>See</u> <u>generally</u> Dkt. 63.  Neither the Complaint nor the Counterclaim raise issues of racial discrimination.  <u>See</u> Dkt. 15; *accord*. Dkt. 63.

   Despite the lack of racially motivated claims, multiple DAB employees gave deposition testimony that the Italian racial heritage of both Gramercy and DCK employees led them to believe that Gramercy and/or DCK were affiliated with organized crime.  When probed, DAB's deponents have only pointed to the fact that Gramercy has Italian employees, Gramercy started as a demolition business, is from New York, and has connections with other construction companies as the basis for any comment about Gramercy's alleged connection to organized crime.  For instance, while being deposed under oath, David Alcos tied Gramercy's employees' Italian heritage and work in the demolition business to the Mafia several times:

> Q.  (BY MR. LUNG) Did anything occur during, or did you have any evidence whatsoever to suggest that Gramercy was had [sic] a relationship with the Mafia?
>
> A.  No evidence on their Mafia relationship.
>
> Q.  Was the sole basis for your belief or being fearful of them was because they were Italian and they were from New York and they were in the demolition business?
>
> A.  I'm still fearful today.
>
> Q.  What is the basis for the fear?

4

A.    They're Italian and they are in the demolition business as we speak.

Q.    Are those the only facts you know that gives rise to your fear?

A.    Their actions on how they terminated me from the project. How they just over -- just pushed me out of the project and kind of overran me on the job.

Q.    Do you agree with me that being Italian and being a demolition contractor in New York, is that a stereotype?

A.    Do I agree with you it's a stereotype? I'm not a stereotype person. You know, I don't know what to think. But just based on the finances and what would happen to me, it did, a personal feeling happened in that way.

Exhibit 1 at 96:8-97:7; see also Exhibit 1 at 95:2-17 (wherein David Alcos testified that he was afraid of Gramercy based solely on the stereotype that all Italians in the demolition industry are part of the Mafia or the Mob).  Likewise, Mr. Bryan Jeremiah noted in his deposition that DAB's running joke was that Gramercy was connected with the Mafia:

A.    (MR. BRYAN JEREMIAH) We often joked about the Mafia, because they were all Italians. You had, you had Frank Falciani, his son, Lou Falciani [of DCK], the whole other rest of the Gramercy gang. The leadership was all Italians. We were, like, it's like a big Mafia. And we'd always joke about that, because seems like these guys are working together. There's something going on.

Exhibit 2 at 123:20-124:1.  Frank and Lou Falciani were DCK employees.

Furthermore, after DAB abandoned the Project and Gramercy initiated its Complaint against DAB, Gramercy learned that David Alcos initiated an investigation with the State of Hawaii's Regulated Industries' Complaint Office

535967-3

on behalf of DAB under the pretense that he was afraid of Gramercy due to its alleged connection to the mob.  See, e.g. Exhibit 1 at 95:2-4.  After the complaint was filed with RICO, the RICO investigator refused to provide any information to Gramercy regarding the complaint that was made against Gramercy.  Declaration of Harvey J. Lung ("Lung Decl."), ¶ 7.  Gramercy cooperated with the "investigation," despite the fact that much of the conversation centered around the contractual payment disputes between DAB and Gramercy.  Lung Decl., ¶ 8.  In the end, no sanction, fine, or action was taken against Gramercy by RICO and RICO has not contacted Gramercy about this matter since in or around late-2016.  Lung Decl., ¶ 9; see also Exhibit 3.

In addition to DAB's comments about organized crime, counsel for DAB has suggested on several occasions that DAB may have to file for bankruptcy if DAB does not prevail in this matter.  Lung Decl., ¶ 8.  DAB has also been represented on several occasions that Mr. David Alcos may have to file for bankruptcy as an individual and that his house may be foreclosed upon if DAB does not prevail in this case.  Lung Decl., ¶ 9.  The hypothetical outcome of this case and the speculative impact it could have on DAB or David Alcos have no relevance to the substantive merits of the claims and defenses in this case and DAB should be precluded from offering any such statements during the trial.

535967-3

III.   <u>THE COURT SHOULD GRANT THIS MOTION</u>

    A.   Gramercy's Alleged Connection To Organized Crime Is Irrelevant Pursuant To FRE 402

Rules 401 and 402 of the Federal Rules of Evidence ("FRE") only allow relevant evidence to be admitted at trial.  Evidence is deemed to be "relevant" if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  FRE 401.  Under FRE 402, "Irrelevant evidence is not admissible."

The instant action involves a breach of contract dispute over a construction subcontract.  <u>See</u> <u>generally</u>, Dkt. 15; *accord*. Dkt. 63.  Contrary to the allegations actually asserted, multiple DAB witnesses have advanced conspiracy theories based solely on the unsupported allegations that Gramercy and/or DCK are connected to organized crime based on their employees' Italian racial heritage, construction experience, or because they are from New York.

Such comments and references are completely irrelevant, are not based on any actual evidence, and are meant purely to paint Gramercy in an unfavorable light.  Moreover, such comments are not relevant to the actual claims and defenses asserted in this case.  Accordingly, DAB must be precluded from offering any testimony or argument on the prejudicial topics considered in this motion.

535967-3

B.     Gramercy's Alleged Connection To Organized Crime And The Financial Consequences Of A Verdict Against DAB Must Be Precluded Pursuant To FRE 403

Even if the Court determines that testimony relating to Gramercy's alleged connection to organized crime or the financial impact of a verdict upon DAB and Mr. Alcos are somehow relevant to DAB's claims and defenses, which it should not, such matters must still be precluded under FRE 403.  Under FRE 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. Rule 403.  Evidence is unduly prejudicial if it creates genuine risk that the emotions of jury will be excited to irrational behavior, and the risk is disproportionate to probative value of offered evidence.  United States v. Miller, 688 F.3d 322 (7th Cir. 2012).  Evidence must be excluded where its relevance is substantially outweighed by its prejudicial effect, that is, by its tendency to encourage jury to decide case on improper grounds.  United States v. Adams 375 F3d 108 (1st Cir. Me. July 14, 2004).  See also United States v. Ramirez-Robles, 386 F.3d 1234, 1243 (9th Cir. 2004) ("Where the probative value is slight, moderate prejudice is unacceptable.").

In this case, testimony or argument relating to either DAB's statements that Gramercy or DCK have alleged connections to organized crime or

8

the speculative impacts the outcome of this matter might have on DAB and

Mr. Alcos have no probative value.  Even if these topics did have probative value,

such value is substantially outweighed by the danger of prejudice, confusion of the

issues, and misleading of the jury should such evidence come in at trial.  The jury

may misconstrue evidence as pertaining to the merits of the case, and the jury may

give such testimony more weight than it deserves.

        First, introduction of evidence, testimony, or argument regarding the

RICO investigation will result in a waste of time at trial.  If introduced,

Gramercy's counsel would be forced to take time from the relevant issues in this

matter to provide witnesses to explain the RICO investigation process.  Gramercy

would also be required to cross-examine David Alcos on his reasoning for and

conversations regarding the filing of the RICO complaint, which would necessarily

bring up David Alcos' racial bias, which he said during his deposition was the sole

reason he made the RICO complaint in the first place.  Therefore, this Court should

preclude the introduction of evidence, testimony, or argument regarding the RICO

investigation.

        Second, evidence, testimony, or argument regarding the RICO

investigation that DAB initiated against Gramercy should be excluded because the

probative value is substantially outweighed by its prejudicial effect.  Not only did

the investigative process lack any form of transparency (e.g., the investigator

9

assigned to the RICO investigation refused to provide any information regarding the complaint against Gramercy), it also never resulted in an official report regarding the agency's findings.  Lung Decl. ¶¶ 5-7.  Thus, reference to the investigation lends no probative value.  It is, however, likely to be extremely prejudicial.

The deposition transcripts reflect that the RICO investigation was initiated by David. Alcos on behalf of DAB because he claims he was "afraid" of Gramercy.  Exhibit 1, 95:2-17.  Even though the agency never delivered an opinion against Gramercy, jurors are likely to believe an investigation by a regulatory agency means that Gramercy committed some wrong to trigger the investigation. If the jury is led to believe Gramercy committed some infraction based on the commencement of a RICO investigation, then the jury is likely to confuse the issue with liability on the separate an unrelated claims in this case.  Such prejudice of wrongdoing is precisely the type of harm FRE 403 was adopted to prevent. Therefore, the Court should prohibit DAB from presenting any evidence, testimony, or arguments about any RICO investigation involving Gramercy.

Third, considering there are no claims relating to racial discrimination or bias, and this matter is not a criminal investigation into organized crime, evidence of ethnicity or connections to organized crime is not relevant and therefore has no probative value.  It is, however, likely to be highly prejudicial.

10

Evidence or testimony alleging Gramercy's Mafia connections may mislead the jury from the real issues at hand and cause them to assume Gramercy is connected to some disreputable organization.  If the jury associates Gramercy with the Mafia, then they are less likely to base their determination on the evidence relating to the actual issues in this case.  Therefore, the Court should prohibit DAB from presenting any evidence, testimony, or arguments about any Gramercy employee's race or any alleged connection of Gramercy to the Mafia.

        Fourth, the potential financial consequences of this action—specifically that Mr. David Alcos may be forced to file for personal bankruptcy, DAB may be forced file for corporate bankruptcy, and that Mr. David Alcos' house may be foreclosed upon—are pure speculation, have no probative, and can only serve to prejudice the jury against Gramercy.  The jury may unfairly sympathize with DAB if it believes that it must award DAB money damages in order to prevent speculative harm or the loss or foreclosure of property, such as David Alcos' family home.  Accordingly, DAB must be barred from introducing evidence regarding DAB or Mr. David Alcos' current financial position, potential bankruptcy, or potential foreclosures.

11

535967-3

IV.   <u>CONCLUSION</u>

Based on the above, Gramercy respectfully requests that this Court GRANT its Motion and enter an order precluding Defendants from introducing any evidence, testimony, or argument at trial regarding the following:

- the Italian heritage of any current or former employees of either Gramercy or DCK;

- that Gramercy has connections to the "Mafia", "Mob", or other crime organizations;

- that Gramercy and DCK conspired against DAB due to their employees' similar racial heritage or alleged Mafia connections;

- that DAB or its employees allegedly feared for their lives, their livelihoods, and the lives of their families because of Gramercy's alleged Mafia connections and/or racial heritage of its employees;

- the Complaint made by DAB against Gramercy to the State of Hawaii Regulated Industries' Complaint Office ("RICO") and the ensuing investigation, which DAB personnel testified was commenced for the sole reason that Gramercy or its employees may be connected to the Mafia because they are Italian, from New York, and work in demolition, and DAB employees therefore feared for their safety; and/or

- the alleged financial consequences of a verdict against DAB, especially any testimony relating to the potential corporate or individual bankruptcy of DAB or Mr. David Alcos or a potential foreclosure on Mr. Alcos' house or other property.

DATED:  Honolulu, Hawaii, February 20, 2018.

/s/ Harvey J. Lung
HARVEY J. LUNG
GRANT FASI ALLISON
JAI KEEP-BARNES
Attorneys for Plaintiff Gramercy Group, Inc.

12

535967-3